IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AT&T CORP, | No. C-06-05400 EDL |
| Plaintiff, | **REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| INNOCOM TELECOM LLC, | |
| Defendant. | |

Plaintiff filed this diversity action against Defendants for breach of contract, open book account, account stated, quantum meruit, intentional misrepresentation, and negligent misrepresentation. Plaintiff alleges that Defendant breached a Global Services Agreement for telecommunications services, failed to pay for such services, failed to pay for services after assuring Plaintiff that Defendant would pay past due amounts, intentionally or negligently induced Plaintiff to rely on such assurances to continue to provide services, and became indebted to Plaintiff in the amount of $1,297, 931.50. Defendant failed to file an answer to the complaint or to appear before the Court. On November 13, 2006, the Clerk of the Court entered default against Defendant. On November 29, 2006, Plaintiff filed this Motion for Default Judgment.

**II. BACKGROUND**

On or about February 26, 2002, AT&T established an account for telecommunication services at the request of Defendant. Carper Decl. ¶ 3. The parties entered into a Global Services Agreement and Global Hubbing Service Terms Attachment. See Compl., Exs. 1 and 2 (Agreement and Attachment). Under the terms of the Agreement, AT&T provided international call termination service, i.e., AT&T accepted telecommunications traffic from Defendant and delivered the traffic

through AT&T's network. Compl. ¶ 9. AT&T billed Defendant for the payment of termination charges. Id.

Beginning in January 2005, unprecedented levels of telecommunications traffic prompted Plaintiff to seek assurances that Defendant would provide timely payment for services. Compl. ¶¶ 11-13. Upon Plaintiff's demand, Defendant failed and refused to pay for AT&T's January and February 2005 services. Id. ¶¶ 14-18. Defendant's failure and refusal to pay continued through subsequent months of negotiations for a new contract. Id. ¶ 22. Pursuant to the contract, AT&T was able to recover some of its loss by netting services Defendant provided AT&T against the debt Defendant owed for services AT&T provided Defendant. See Compl. ¶ 31 and Ex. 2 § 3.2 ("Settlements Netting Process"). Defendant's outstanding debt, due and owing, is $1,297,931.50, with interest from the date of demand. Plaintiff seeks this amount, plus interest and filing fees, in compensation.[1]

The parties agreed that the laws of the State of New York would govern the interpretation and enforcement of the Agreement. See Ex. 1 (Agreement) at § 12.5. The parties also agreed that any dispute arising out of this agreement would be settled by binding arbitration. Id. § 12.2. The parties further agreed that, in resolving disputes arising out of the Agreement, each party would bear its own costs and expenses. Id. § 12.2.

**III.  DISCUSSION**

    **A.  Default Judgment**

Pursuant to Rule 55(b), if the plaintiff's claim is for sum certain, the clerk may enter default judgment for that amount; in all other cases, the party entitled to the default must apply to the court. Fed. R. Civ. P. 55(b). The district court's decision whether to enter a default judgment is discretionary. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) ( per curium).

The general rule is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. Televideo Systems, Inc. v. Heidenthal, 826

---

[1] Under New York law, "attorneys' fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties or by statute or court rule." Hooper Assoc. Ltd. v. AGS Computers, Inc., 548 N.E.2d 903, 903 (N.Y. App. 1989). Plaintiff has not identified any applicable contractual or statutory cost-shifting provision. Accordingly, Plaintiff has withdrawn its initial request for attorneys' fees.

2

1  F.2d 915, 917-918 ( 9th Cir. 1987) (per curiam) (citing Geddes v. United Financial Group, 559 F.2d
2  557, 560 (9th Cir. 1977).  Necessary facts not contained in the pleadings, and claims which are
3  legally insufficient, however, are not established by default.  Cripps v. Life Ins. Co. of North
4  America, 980 F. 2d 1261 (9th Cir. 1992).  Rule 55(b)(2) allows, but does not require, the court to
5  conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages
6  awarded in the default judgment.  Action S.A. v. Marc Rich & Co. Inc., 951 F.2d 504, 508 (2nd Cir.
7  1991).  Relief is limited to the plaintiff's specific demand in his complaint.  Fed R. Civ. P. 54(c).
8  Pursuant to substantive New York law, which governs the contract by the contract's terms, interest
9  upon a sum awarded because of a breach of performance of a contract shall be computed from the
10 date incurred, and, if damages were incurred at various times, interest shall be computed upon each
11 item from the date it was incurred or upon all of the damages from a single reasonable intermediate
12 date.  New York Civil Practice Law & Rules, § 5001.  Interest shall be at the rate of nine per centum
13 per annum, except where otherwise provided by statute.  Id., § 5004.  Statutory interest is calculated
14 on a simple, not compound, basis.  See Till v. Paul Frederick Fox & Affiliates, 261 A.D.2d 853
15 (N.Y. App. Div. 1999).

16   Entry of default judgment requires the consideration of several factors, including: (1) the
17 possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the
18 sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a
19 dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the
20 strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See
21 Eitel v. McCool, 782 F.3d 1470, 1471-72 (9th Cir. 1986).

22   Plaintiff would be prejudiced by further delay in this case against a non-participating
23 defendant.  Plaintiff has unsuccessfully demanded payment from Defendant without the Court's
24 assistance for almost two years.  Plaintiff has provided copies of invoices, contracts, and
25 declarations that supply strong evidence supporting its claim.  The amount of money sought by
26 Plaintiff is substantial.  There do not appear to be any material facts in dispute.  There is no evidence
27 of excusable neglect by Defendant; on the contrary, Plaintiff declares that Defendant assured
28 Plaintiff it would make payment.  Defendant is a corporation, not an infant, incompetent, or military

3

person, and has received notice of court proceedings in general and of Plaintiff's motion in particular. Plaintiff has failed to respond. On balance, the factors weigh in favor of granting default judgment.

**B.    Arbitration Clause**

Although the factors weigh in favor of entry of default judgment, it appears from an initial inspection that the dispute at issue falls within the terms of a contractual arbitration clause and limited liability provision. Here, the Global Services Agreement Plaintiff seeks to enforce contains the following provision:

> Except as provided in Section 7.7 [relating to injunctive relief], any controversy, dispute or claim arising out of or relating to the Agreement, or the breach, termination or invalidity thereof, will be settled by binding arbitration before a single neutral arbitrator in the State of New York, U.S.A., or other mutually agreed location in accordance with the UNCITRAL Arbitration Rules then in effect. The appointing and administering authority for the arbitration will be the International Chamber of Commerce. ...The arbitrator will have the authority to award equitable relief but will not have the authority to award punitive or other non-compensatory damages to either Party or to award any damages in excess of the limits set forth in Section 9 or a Service Attachment."

Compl. Ex. 1 (Global Services Agreement) at § 12.2.[2]

Upon request, a federal court must stay an action on issues that by written agreement are subject to arbitration, in order to allow arbitration of a suit subject to such clause. See Federal Arbitration Act, 9 U.S.C. § 3 ("the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."). Here, no party has requested a stay.

Further, Plaintiff argues that Defendant has waived its right to enforce arbitration in this

---

[2] In addition, under Section 9 of the contract, damages are limited to "direct damages in an amount that does not exceed the total net payments payable by the Purchaser under the Agreement during the 12 months preceding the month in which the damage occurred, provided further that the limit on direct damages (a) applies to each claim individually and to all claims in the aggregate during any 12-month period and (b) if the direct damages result from or relate to one or more specific services, the limit will be based on purchaser payments in respect of those services." Id. at § 9.2. In addition, "neither party will be liable to the other for any incidental, consequential, reliance, special or other indirect damages ... arising out of or related to the agreement or the services whether or not such party has been advised of the possibility of such damages." Id. at § 9.3. Plaintiff, however, does not seek any damages beyond those permitted under these provisions.

4

matter through prejudicial delay. Although a waiver of the right to arbitration is "not to be lightly inferred," see MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 249 (4th Cir. 2001) (internal quotation marks omitted), a party may waive the right by delaying its assertion to such an extent that the opposing party incurs actual prejudice. Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 131 (2d Cir. 1997) (recognizing that a party waives the right to arbitrate where it delays the invocation of that right to the extent that the opposing party incurs "unnecessary delay or expense") (internal quotation marks omitted).

Although this matter was filed only six months ago, Defendant's payment for services is overdue by approximately 24 months, from January 2005 to January 2007. Defendant has never asserted that this matter should be resolved through arbitration. See Supp. Kempton Decl., ¶ 5 (noting Defendant's counsel made no request to refer matter to arbitration in over 20 written communications over preceding six months, including silence in response to a recent query directly addressing possibility of arbitration). The two year period of silence in face of an active dispute and direct communications is sufficient to constitute waiver. See, e.g., General Star Nat'l Ins. Co. v. Administratia Asigurarilor De Stat, 289 F.3d 434 (6th Cir. 2002) (denying request to vacate default judgment because the defendant's 17-month delay before seeking to enforce an arbitration clause prejudiced the plaintiff and consequently constituted a waiver of the defendant's right to arbitration); see also Menorah Ins. Co. V. INX Reinsurance Corp., 72 F.3d 218, 222 (1st Cir. 1995) (waiver found where arbitration not invoked for 17 months); Stone v. E.F. Hutton & Co., 898 F.2d 1542, 1543 (11th Cir. 1990) (waiver found where assertion delayed for 20 months). Therefore, because the right to arbitrate has been waived, this Court has jurisdiction to decide the matter.

**C.     Calculation of Judgment Amount**

Plaintiff provided an accounting of Defendant's outstanding debt and court costs. The outstanding net debt totals $1,297, 931.50, and the filing fee court costs total $350. In addition, Plaintiff clarified its accounting of prejudgment interest. Plaintiff applied an interest amount of 9%, in accordance with New York Civil Practice Law & Rules § 5004, from the date of the unpaid January 14, 2005 invoice, and the date of the unpaid February 15, 2005 invoice, to the date judgment is ordered. The January 14, 2005 invoice totaled $716,830.30. A 9% annual interest on this amount

5

translates to a daily rate of $176.75. Interest accruing between January 14, 2005 and January 17, 2007, a period of 734 days, amounts to $129,734.50. The February 15, 2005 invoice totaled $581,101.20. A 9% annual interest on this amount translates to a daily rate of $143.28. Interest accruing between February 15, 2005 and January 17, 2007, a period of 701 days, amounts to $100,439.28. In total, the interest amounts to $230,173.78. The Court finds that these calculations comply with New York law regarding calculation of interest. See New York Civil Practice Law & Rules §§ 5001 and 5004.

**IV.     CONCLUSION**

For the reasons set forth above, and for good cause shown, It Is Hereby Recommended that Plaintiff be awarded the principal amount of $1,297,931.50, prejudgment interest in the amount of $230,173.78, and costs be taxed in the amount of $350, for the total amount of $1,528,455.20.

Any party may serve and file specific written objections to this recommendation within ten (10) working days after being served with a copy. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

**IT IS SO RECOMMENDED.**

Dated: January 17, 2007

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge